gomery, and the firm was dissolved; but the partnership was in fact insolvent on the last days of December, 1868. Sage was declared bankrupt. Montgomery sold his property, real and personal, to his father, Thomas Montgomery, and Baldwin Griffin, his brother-in-law, to secure them for moneys advanced to him by them. It was of this transfer that Montgomery's creditors complained, and a petition was filed in this court as aforesaid. Your petitioner further shows that by his counsel and advice all the property transferred by said Montgomery to his father and Griffin, both real and personal, was at once surrendered, given up, and transferred to the assignee without any trouble, expense, or hindrance on the part of the bankrupt or his friends, and the assignee has taken possession of the same and turned the same into money, and realized from the sale thereof some six thousand dollars, as your petitioner is informed and believes true, and the said amount is now in his hands awaiting distribution. Your petitioner further shows that said bankrupt has voluntarily surrendered all his property to the said assignee, and that he is to-day not worth one dollar, and has no means with which to pay the petitioner's fees and expenses as counsel, and which services are rendered necessary therein; and that by reason of the counsel, advice, services, fees, and expenses so made and incurred, and rendered by said petitioner to and for said Montgomery, as stated in the schedule hereto annexed, there has been actually saved to said estate and the creditors the sum of five hundred dollars, and your petitioner will go unpaid and unrewarded for his services and expenses, unless the same be paid out of the moneys in the hands of the assignee. Your petitioner further says that the services and expenses set forth in the annexed bill are true and correct, and the charges reasonable, and that your petitioner has had no pay therefor. Your petitioner, therefore, asks that an order may be granted allowing to him the amount of said bill from the moneys in the hands of the assignee. Jas. B. Olney.

[Estate of H. B. Montgomery,
To Jas. B. Olney, Dr.

| | |
|---|---|
| February 20, 1869.—To services at New York two days from Catskill, on order to show cause why decree of bankruptcy should not be made, before the United States district court | $ 40 00 |
| Expenses | 18 60 |
| Services making and copying inventory and schedules for Montgomery, two days | 20 00 |
| Cash paid for blanks | 2 60 |
| Services on first meeting in preparing papers bankrupt | 10 00 |
| Services at subsequent times, and attendance before register for Montgomery, and counsel | 30 00 |
| Services rendered otherwise in bankrupt proceedings | 15 00 |
| August 17.—Services before the register on behalf of Montgomery | 20 00 |
| | $156 20 |

[By THEODORE B. GATES, Register:
[I think that the services and advice of Mr. Olney has saved the estate in the above matter considerable expense, and expedited the conversion of the estate into money, and, if consistent with the practice in like cases, I would recommend the payment of the above bill out of funds in the hands of assignee.] 2

BLATCHFORD, District Judge. If the assignee shall, in writing, approve of the payment of this bill out of the funds of the estate, on the grounds set forth in the petition of Mr. Olney, and in the certificate of the register, and of the amount of the charges, an order will be made allowing its payment.

[NOTE. This case was subsequently heard upon motion of assignee to strike out claim of Baldwin Griffin, a preferred creditor, who had voluntarily surrendered his preference. Case No. 9,728. Afterwards James B. Olney was allowed to file supplemental proof of debt. Id. 9,729. Upon motion of assignee, the proof of debt filed by Jonathan B. Cowles was stricken out. Id. 9,730. The case was then heard for a determination of the priorities of creditors (Id. 9,727), and finally upon the application of Thomas Montgomery, a creditor, to be allowed to amend proof of claim (Id. 9,731).]

## Case No. 9,727.

### In re MONTGOMERY.

[3 Ben. 567;1 3 N. B. R. 429 (Quarto, 109).]

District Court, S. D. New York. Dec. 23, 1869.

#### BANKRUPTCY—INDIVIDUAL AND PARTNERSHIP ASSETS.

One member of a firm bought out the other, taking the notes and books of the firm, and agreeing to pay the debts of the firm, and he continued the business for fourteen months, replenishing the stock, mingling old and new, and selling from either indifferently, so that it was impossible to tell which were the firm's goods. He was then adjudicated a bankrupt, and the stock was sold by the assignee as his goods: *Held*, that the proceeds in the hands of the assignee were to be held to be the individual estate of the bankrupt, and to be subject to the payment of his individual debts, before they could be applied to the payment of the debts of the firm.

[Cited in Re Rice, Case No. 11,750.]

[This case was formerly heard upon application of bankrupt's attorney to be paid counsel fees. Application allowed. Case No. 9,726. It was again heard upon motion of assignee to strike out claim of Baldwin Griffin, a preferred creditor, who had voluntarily surrendered his preference. Id. 9,728. It was then heard upon motion of James B. Olney, a creditor, to be allowed to file supplemental proof of debt. Id. 9,729. Upon motion of assignee, the proof of debt filed by Jonathan B. Cowles was stricken out. Id. 9,730.]

The register [Theodore B. Gates] certified to the court a question, as to the class of creditors who were first entitled to dividends.

2 [From 3 N. B. R. 137 (Quarto 35).]
1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

The question arose on the following facts: Up to November 23d, 1867, the bankrupt and Sylvester B. Sage were copartners in business, under the name and style of Montgomery & Sage, at Prattsville, in Greene county, as country merchants. On the day named, Sage sold out his interest in the store to Montgomery. The agreement contained this clause: "Also, that the said Henry B. Montgomery take the notes and books of the firm of Montgomery & Sage, and collect the same as far as can be, and, with the proceeds of the same, pay all the liabilities of the firm of Montgomery & Sage, which is this day dissolved, by mutual consent. But if there proves to be a deficiency, or not enough to pay the debts, the remainder is to be paid equally by both parties, and, in case there proves to be an overplus, or more than enough to pay the liabilities, then the balance is to be equally divided between both parties." On the 5th of January, 1869, Sage was adjudicated a bankrupt, on his own petition, and, about one month afterwards, Montgomery was adjudicated a bankrupt, upon the petition of certain of his creditors. Montgomery had continued the mercantile business as successor to Montgomery & Sage, and had, from time to time, replenished the stock of goods, mingling old and new together, and selling from either indifferently, so that it was impossible to tell which were the goods of Montgomery & Sage, and which were the goods of Montgomery alone. Moreover, the entire stock had been sold by the assignee of Montgomery as Montgomery's goods. The register gave his opinion, that the assets in the hands of the assignee should be regarded as belonging to Montgomery's individual estate, and liable, in the first instance, to the payment of Montgomery's individual debts in full, before any portion could be applied to the payment of the debts of Montgomery & Sage.

BLATCHFORD, District Judge. I concur with the register in his conclusion.

[NOTE. This case was again heard upon application of Thomas Montgomery to be allowed to file amended proof of debt. Case No. 9,731.]

======

## Case No. 9,728.

### In re MONTGOMERY.

[3 Ben. 565;[1] 3 N. B. R. 374 (Quarto, 97).]

District Court, S. D. New York. Dec. 11, 1869.

BANKRUPTCY — FRAUDULENT PREFERENCE — SURRENDER BY PREFERRED CREDITOR — RIGHT TO PROVE DEBT.

Where a creditor, who had received property from a bankrupt, in preference over other creditors, contrary to the 39th section of the bankruptcy act [of 1867 (14 Stat. 536)], had surrendered it to the assignee: *Held*, that, under the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

23d section of the act, he could prove his debt against the estate.

[Cited in Re Reece, Case No. 11,633; Re Davidson, Id. 3,599; Re Tonkin, Id. 14,094; Re Scott, Id. 12,518; Re Hunt, Id. 6,882; Re Stephens, Id. 13,365; Re Dunkle, Id. 4,160; Re Baxter, 25 Fed. 701.]

[This case was formerly heard upon application of James B. Olney, attorney for the bankrupt, to be paid counsel fees. The application was allowed. Case No. 9,726.]

[2][This is a case of involuntary bankruptcy. Richard P. Burhaus, the assignee in this matter, applied for an order for the examination of Baldwin Griffin, a supposed creditor of the above-named bankrupt, who had proved and filed his claim against the above bankrupt. An order was duly issued on such application, and the said Griffin appeared before the undersigned and submitted to such examination. It appeared, on the examination, that the bankrupt had been a merchant at Prattsville, in Greene county, and that on the 9th day of January, 1869, he executed a bill of sale to Griffin of all the goods in the store and of the books of account of said Montgomery against his customers. The stipulated consideration was nine thousand dollars, from which was to be deducted two thousand one hundred and sixty-eight dollars and forty cents, alleged to be due from Montgomery to Griffin, and the residue was to be paid on various notes and other debts of Montgomery, some twenty-three in number, and which are set out in the bill of sale. Griffin is a brother-in-law of Montgomery, and had been a clerk in his store, and the evidence leaves no doubt upon my mind but that Griffin knew at the time he accepted the bill of sale and the property therein specified, that Montgomery was insolvent, and that this sale was designed to give him, Griffin, and the creditors mentioned in the bill of sale, a preference over the other creditors of said Montgomery. This transaction constituted one of the grounds upon which Montgomery was adjudicated a bankrupt. Griffin voluntarily surrendered to the assignee the property and accounts which he had received under the bill of sale.

[On this state of facts the solicitor for the assignee moved to strike out the claim proved by Baldwin Griffin, and that such claim be disallowed on the ground that Henry B. Montgomery, the bankrupt, being insolvent, or in contemplation of insolvency, on or about the 9th day of January, 1869, made a sale of his goods, chattels, property and estate to the said Baldwin Griffin, of great value, to wit: of the value of nine thousand dollars, with intent to give a preference to one or more of his creditors, or one or more persons who might become liable for him as indorsers or security, in fraud of the act of congress to establish a uniform system of bankruptcy throughout the United States, passed March 2, 1867 [14 Stat. 517]. That said Montgomery

[2] [From 3 N. B. R. 374 (Quarto, 97).]